UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Richard R. Goecke, | Case No. 22-cv-3087 (KMM/DJF) |
| Plaintiff, | |
| v. | **ORDER** |
| 3M Company, | |
| Defendant. | |

Plaintiff Richard Goecke sued his former employer, 3M Company ("3M"), for disability and religious discrimination under state and federal law. *See* ECF 1 (Compl.). His claims arise out of COVID-19 ("Covid") vaccination requirements imposed by 3M during the height of the global pandemic. *See, e.g.*, ECF 55 (Pl.'s Mem. in Opp. to Summ. J.) at 3. This Court previously narrowed the scope of Mr. Goecke's lawsuit by dismissing his disability claims for a failure to exhaust administrative remedies. ECF 28. This left Mr. Goecke's religious discrimination claims. Pending before the Court is 3M's Motion for Summary Judgment on those remaining claims. ECF 44. For the reasons that follow, the Court grants 3M's motion and dismisses this case.

**I.    Background**

Mr. Goecke worked as an engineer in 3M's division focusing on reflective film applications for nearly three decades. *See, e.g.*, ECF 48-1 (Ex. A to Boone Decl.), Goecke Dep. Tr. at 13–16; ECF 55 at 3 (discussing Mr. Goecke as being "an exemplary employee who worked at 3M for almost 30 years and designed cutting-edge technology that had

significant impacts on 3M's production"); ECF 48-2 (Ex. 16 to Goecke Dep.) at 41 (manager referring to Mr. Goecke's "great 3M career" in email correspondence). Nothing in the record suggests any history of discipline for Mr. Goecke or indeed of any conflict in the workplace at all.

The events leading to this litigation began some months into the Covid pandemic, when 3M, like many other large American employers, began to implement a workforce-wide vaccination push. According to 3M, this effort began in response to an executive order from the President, which 3M interpreted as imposing a mandate on federal contractors that their employers receive a Covid vaccine in line with federal guidance. *See* ECF 46 (Def.'s Mem. in Supp. of Summ. J.) at 4 (discussing Executive Order 14042). It is undisputed that 3M is a federal contractor, and Mr. Goecke does not appear to dispute that 3M's vaccination mandate was the result of the executive order.[1]

On September 10, 2021, 3M sent its U.S.-based employees an email, informing them about the executive order and stating that 3M was required to comply with it. *See id*. at 4–5; *see* ECF 48-2 (Ex. 2 to Goecke Dep.) at 5. Shortly thereafter, 3M informed employees that they "must be fully vaccinated and provide proof of vaccination by December 8, 2021." ECF 48-2 (Ex. 4 to Goecke Dep.) at 21. In this same follow-up communication, employees were informed of the processes for seeking a medical or religious exemption, *see id.* at 22, and told that those who failed to receive an exemption or become fully vaccinated by the deadline would be "reviewed for termination." *Id*.

---

[1] Exec. Order No. 14,042, 86 Fed. Reg. 50,985 (Sept. 9, 2021).

Mr. Goecke did not wish to receive a Covid vaccine, and he sought a religious exemption to the vaccination requirement. *See, e.g., id*. (Ex. 31 to Goecke Dep.) (3M company email to Mr. Goecke acknowledging his submission of a request for a religious exemption on October 25, 2021). His communications from the time the mandate was issued reveal concerns about the safety of the emerging vaccine options. In an October 19, 2021 message to a colleague, Robert Yapel, he referred to one of the available vaccines as a "clot shot," because he believed the inoculation caused blood clots. ECF 48-2 (Ex. 9 to Goecke Dep.) at 26. In the same conversation, he stated his concern about the timing of the vaccine mandates because there was "no fully approved vaccine available in the US" yet, and that he "consider[ed] it a violation of my rights to have an unproven medical procedure done to me." *Id*. at 27–28.

Mr. Goecke also began to intimate to his supervisors that, if his exemption request was denied, he would retire rather than become vaccinated by the December 8 deadline. On October 25, 2021, in an email to his manager, Kyle Starkey, and others, he expressed frustration that another vaccine, which he appears to have believed was safer, was not yet available. *Id*. (Ex. 10 to the Goecke Dep.) at 30 ("If the Novavax solution had been released and available, this would not be an issue as I can accept that version."). Mr. Goecke added that he was "hoping 3M would not push me to this point. . . . but barring [approval of the religious exemption request], I will most likely be retiring soon." *Id*. On October 28, he placed his request to begin receiving pension benefits starting on December 1, with a last day of employment to occur on November 30. *Id*. (Exs. 12, 13 to Goecke Dep.) at 32–34.

3

On November 4, 2021, Mr. Starkey noted Mr. Goecke's position on retirement, but proposed that no announcement be made, in case Mr. Goecke's exemption was approved, so that Mr. Goecke was not forced to "tip [his] cards" to his colleagues in the meantime. *Id*. (Ex. 16 to Goecke Dep.) at 42. Mr. Goecke responded the next day:

> No. I think you should go ahead and announce that I am retiring as of Dec 1st. This has twisted me up in knots at this point, and I see a path toward retirement that I think nothing is going to stop it. . . . I've spoken to several people I know that are in a similar situation to me, and their exemptions are being dismissed so I see no reason that mine will be different. . . . I hope that I am wrong about this. If so, then I just retired early. Problem is, I have a good track record of being right.

*Id*. at 41–42. Mr. Starkey acknowledged that Mr. Goecke had made up his mind and expressed that he was "truly sorry that this is causing you so much conflict" and that he "hate[d] to see a great 3M career end this way." *Id*. at 41.

On November 11, 2021, 3M informed Mr. Goecke and all other employees that the deadline for being vaccinated was now January 4, 2022, subject to a "limited grace period" if an employee was "taking good-faith actions" to become vaccinated. *Id*. (Ex. 8 to Goecke Dep.) at 24. Mr. Goecke later testified that while he had printed out the November 11 email and "threw it in the file," he was unaware of the new vaccination deadline because he did not believe he had read the email "cover to cover" and "didn't read all the new things that were in there." ECF 48-1 (Goecke Dep. Tr. 94:2–9) at 54. On November 16, he had an exit interview and handed over his computer. ECF 48-1 (Goecke Dep. Tr. 76:8–11) at 42. On November 23, Mr. Yapel emailed Mr. Goecke to ask: "Just checking in. Are you still on track for retiring Dec. 1 or is there an adjustment in plans[?]" *Id*. (Ex. 18 to Goecke Dep.) at 44. Mr. Goecke responded on November 25:

4

> Yes—In fact, I am already retired. With vacation, my last day with 3M was Tuesday afternoon the 16th. I went in to clean my office and checked out with my boss Kyle. As of right now, I am all done with 3M. . . . I never did hear back on my religious exemption, and now frankly don't care anymore. I will never take that gene therapy jab.

*Id*.

On November 30, 2025, Mr. Goecke's religious exemption request was denied. *Id*. (Ex. 19 to Goecke Dep.) at 45. 3M's email to Mr. Goecke explained that he had had not demonstrated a religious belief that warranted an exemption to the vaccination requirement and that there was no reasonable accommodation that the company could provide in lieu of vaccination. *Id*. The company's communication ended with a reminder that "3M prohibits retaliation for requesting a religious accommodation and if you have any concerns about retaliation, report them immediately. . . .". *Id.* No mention of termination was made, nor of any other administrative next steps. At his deposition, Mr. Goecke testified that he believed he saw this email on November 30, which was his last day of work. ECF 48-1 (Goecke Dep. Tr. 84:5–10) at 49.

Two weeks after Mr. Goecke's last day at work, on December 13, 2021, 3M sent him an email stating that, following a federal court order halting the federal contractor vaccine mandate, "employees will not be required to be vaccinated at any of our sites, and 3M will stop all company activities to implement the mandate. Your denied accommodation request no longer has any impact as the requirement no longer stands." *Id*. (Ex. 20 to Goecke Dep.) at 46. Mr. Goecke later testified that he never received this email because he had left 3M and had stopped attempting to check his company email. ECF 48-1 (Goecke Dep. Tr. 87:23–88:10) at 50–51. He testified that he became aware that 3M had

reversed its policy through his former colleague Mr. Yapel at some time in January 2022 but that he did not take any steps to see if he could return to work at 3M because he was "already out the door." *Id.* (Dep. Tr. 89:19–90:19) at 52–53. As noted above, this case was filed a little over a year after Mr. Goecke's last day at 3M.

**II.    Legal Standard**

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Dowden v. Cornerstone Nat'l Ins. Co.*, 11 F.4th 866, 872 (8th Cir. 2021). The moving party must demonstrate that the material facts are undisputed. *Celotex*, 477 U.S. at 322. A fact is "material" only if its resolution could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the moving party properly supports a motion for summary judgment, the opposing party may not rest on mere allegations or denials, but must show, through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *Id.* at 256; *McGowen, Hurst, Clark & Smith, P.C.* v. Com. Bank, 11 F.4th 702, 710 (8th Cir. 2021). A dispute of fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts must view the inferences to be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Irvin v. Richardson*, 20 F.4th 1199 (8th Cir. 2021). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . .

." *Nunn v. Noodles & Co.*, 674 F.3d 910, 914 (8th Cir. 2012) (quoting *Anderson*, 477 U.S. at 255).

### III.   Discussion

Mr. Goecke's remaining claims in this case arise under Title VII of the Civil Rights Act and are based on religious discrimination. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In a Title VII case, to avoid summary judgment, a plaintiff must first establish a prima facie case of discrimination. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To do so, a plaintiff must show: (1) they are a member of a protected class because of their religious beliefs, (2) they met their employer's legitimate expectations, (3) they suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination. *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1113 (8th Cir. 2024) (quoting *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015)).

Here, 3M argues that it is entitled to summary judgment because Mr. Goecke has failed to establish a prima facie case in several ways, which fall into two broad categories. First, 3M argues that Mr. Goecke never suffered an adverse employment action because he chose to retire, *see, e.g.*, ECF 46 at 1–2 (arguing that "the undisputed facts show that [Mr.] Goecke preemptively retired before 3M could even have taken adverse action for failure to obtain a COVID-19 vaccine"), and that relatedly, Mr. Goekce cannot claim a "constructive

7

discharge" because he was not subjected to any intolerable workplace conditions and retired before 3M's vaccination requirement was scheduled to take effect and before it was revoked, *see id*. at 2–3. Second, 3M argues that Mr. Goecke has failed to produce evidence that he has a genuine religious objection to vaccination or that 3M's denial of his religious accommodation request gives rise to an inference of discrimination. *See id*. at 3.

The Court finds that Mr. Goecke has failed to adduce evidence that he suffered an adverse employment action or was subject to a constructive discharge, and summary judgment is appropriate. The Court therefore declines to address 3M's remaining arguments.

### A.   No Adverse Employment Action

An adverse employment action is a disadvantageous change to the compensation, terms, conditions, or privileges of employment. *See Muldrow v. St. Louis*, 601 U.S. 346, 354 (2024); *see also* 42 U.S.C. § 2000e-2(a). The claimed injury need not be significant, material, or serious. *Cole*, 105 F.4th at 1114 (citing *Muldrow*, 601 U.S. at 356 n.2). As such, Mr. Goecke "is only required to plead 'some harm respecting an identifiable term or condition of employment.'" *Id*. (quoting *Muldrow*, 601 U.S. at 355). But here, Mr. Goecke has failed to raise a genuine dispute that he suffered any harm in any term or condition of employment at all.

In short, not only did Mr. Goecke leave 3M before he could be fired or otherwise punished for failing to meet 3M's vaccination requirement, but he quit before he was even in violation of that requirement, which was itself never actually implemented. As such, the harm that *could have* accrued to Mr. Goecke by 3M's vaccination mandate never did and

8

never would have. To be sure, the only consequence ever explicitly threatened for lack of compliance with the initial December 8, 2021 deadline for becoming vaccinated, was that an abstaining employee without an approved accommodation request would be "reviewed for termination." ECF 48-2 (Ex. 4 to Goecke Dep.) at 21.

Had Mr. Goecke actually been terminated or otherwise disciplined for refusing to be vaccinated, this would constitute and adverse employment action, and the Court's analysis of this prima facie element would end there. But a cognizable harm to a condition of his employment did not occur for several reasons. First, the immediate threat of a "review for termination" was forestalled, when the initial December 8, 2021 vaccination deadline was extended to January 4, 2022. *Id*. (Ex. 8 to Goecke Dep.) at 24. This new deadline was more than a month after Mr. Goecke's last day at 3M, and whether or not Mr. Goecke was aware of the new deadline, it is undisputed that nothing would have happened to him on December 8. Second, the threat of a "review for termination" was then permanently defused when 3M revoked its vaccination requirement entirely on December 13, 2021. *Id*. (Ex. 20 to Goecke Dep.) at 46. True, Mr. Goecke had already worked his last day by the time 3M made this announcement, and there appears to be some ambiguity in the record about when and how he became aware of the mid-December change in policy. But this simply accentuates the third reason that Mr. Goecke was never harmed by 3M's short-lived vaccination requirement: he had retired and stopped paying attention to the vagaries of 3M's workplace policy.

According to his pension request paperwork, submitted on October 28, 2021, Mr. Goecke's last day at 3M was to be November 30, 2021, more than a week ahead of the

9

original deadline to be vaccinated and over a month before the extended deadline. Indeed, the record further suggests that he had largely stopped working before that date, while he used up remaining vacation time. His communications, discussed above, with Mr. Starkey and Mr. Yapel make plain that Mr. Goecke had taken this step preemptively, out of indignation and resignation about the looming vaccine requirement. To be sure, the summary judgment record indicates that the vaccine requirement was the motivating, if not sole basis for Mr. Goecke's decision to retire. *Cf. Lisdahl v. Mayo Found.*, 633 F.3d 712, 719 (8th Cir. 2011) (finding no constructive discharge where plaintiff took medical leave and then "simply resigned, offering a reason in sworn statements that is inconsistent with the explanation" offered in a subsequent discrimination lawsuit). But Mr. Goecke can point to no case in which an individual suffered an adverse employment action by an employer's *forthcoming* policy, before that policy harmed him or anyone at all. The dearth of any case law with similar facts is explained, at least in part, by the fact that 3M never did implement the policy that Mr. Goecke objected to. Indeed, 3M's change in course illustrates why, however unfair it may feel in the moment, an employee needs to have actually suffered some discriminatory harm, and not merely the anticipation of harm yet to come, before they are entitled to claim discrimination under Title VII. Indeed, even once the police was vacated, Mr. Goecke did nothing to attempt to return to work. This is not an adverse employment action.

    **B.**    **No Constructive Discharge**

Mr. Goecke alternatively argues that that he was subjected to a "constructive discharge" or "forced retirement." But again, because Mr. Goecke quit before anything actually happened to him, this claim fails, too.

It is well settled that a Title VII claim can be premised on a constructive discharge. *Bell v. Baptist Health*, 60 F.4th 1198, 1203 (8th Cir. 2023) (citing *Penn. State Police v. Suders*, 542 U.S. 129, 143 (2004)). To establish such a claim, a plaintiff must show that (1) a reasonable person in their situation would find the working conditions intolerable, (2) the employer intended to force the employee to quit. *Id*. Furthermore, a constructive discharge claim "fail[s] as a matter of law where the employee has not given the employer a reasonable opportunity to correct the intolerable condition before the employee quits." *Baker v. City of Woodbury*, No. 20-cv-1787 (DSD/DLM), 2023 WL 8809996, at *9 (D. Minn. Dec. 20, 2023) (quoting *Lisdahl*, 633 F.3d at 719). As such, "[t]he bar to show constructive discharge is high." *Baptist Health*, 60 F.4th at 1203 (citing *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 810–11 (8th Cir. 2008)).

This Court can imagine a scenario in which a person might be subjected to sufficient workplace hostility or alienation, based on his vaccination stance, to create a triable issue of fact over whether 3M intended to force him to quit rather than fire him. Take for example the facts presented in *Cole*, in which the plaintiff, a physical therapist, was allowed to retain her position with her employer despite being unvaccinated, but was allegedly forced to wear an distinctive orange badge denoting her unvaccinated status, subjected to "scorn, ridicule, and embarrassment" due to her colleagues awareness of her unvaccinated status, and faced "reassignment to a different patient care area or other work setting" because she

11

was not vaccinated. 105 F.4th at 1112.[2] Alternatively, had Mr. Goecke actually missed a vaccination deadline and then faced a hard ultimatum to retire with benefits or be terminated without them, "choosing" to retire under such circumstances might better buttress a subsequent constructive discharge claim. *See Holston v. City of Hope, Ark.*, No. 4:17-cv-04005, 2020 WL 60246, at *4 (W.D. Ark. Jan. 6, 2020) (opining that a seemingly voluntary retirement could amount to an "adverse employment action when an employer forces an employee to choose between early retirement or continuing to work under intolerable conditions, like the threat of termination without benefits"), *aff'd,* 831 F. App'x 231 (8th Cir. 2020).

But neither scenario, nor any scenario remotely comparable, is presented here. Again, Mr. Goecke never actually failed to meet a vaccination deadline because he quit on November 30, 2021. And since he never missed such a deadline, there is no evidence that his lack of vaccination was ever subject to any kind of scrutiny, discipline, or even official acknowledgment at all. Furthermore, there is no evidence in the record that anyone suggested that Mr. Goecke needed to retire by a certain date to avoid consequences later from his refusal to be vaccinated. Indeed, Mr. Goecke acknowledged that he knew his pension was vested and could not be taken away or penalized, even if he had been terminated due to his refusal to be vaccinated. ECF 48-1 (Goecke Dep. Tr. 111:7–9) at 66.

---

[2] *Cole* is not a constructive discharge case, and the plaintiff in that case did not quit, but instead claimed an adverse employment outcome based on the imposition of what she was alleged were punitive workplace measures and inadequate accommodation of her religious opposition to her employer's Covid vaccine requirement. *See* 105 F.4th at 1113. Cole also considered a motion to dismiss, reviewing the sufficiency of the allegations in the complaint, rather than a developed factual record.

And while Mr. Goecke may have felt subjectively antagonized by 3M leadership over the vaccine requirement, nothing in the record suggests that his opposition to the requirement led to any actual change in his employment conditions—whether through reassignment, veiled or overt criticism, singling out, or otherwise.[3] Instead, the record shows only that his opposition to being vaccinated was met with, at worst, some surprise and disappointment by his supervisor Mr. Starkey, who otherwise sought to validate Mr. Goecke's convictions and expressly offered Mr. Goecke control over his own narrative vis-a-vis announcing his retirement plans. In short, Mr. Goecke has failed to adduce any evidence that his working conditions were affected in any way whatsoever by his opposition to the vaccine requirement, let alone evidence of changes to his workplace condition that a reasonable person would find intolerable and that manifested 3M's intent to force him to quit.

Moreover, Mr. Goecke has not presented evidence that he gave 3M a reasonable opportunity to correct any objectionable condition before he quit, without which his constructive discharge theory fails as a matter of law. *Lisdahl*, 633 F.3d at 719. Instead, what the record shows is that 3M did "correct" the purportedly intolerable condition, by withdrawing the vaccine requirement before Mr. Goecke or anyone else was terminated or disciplined, but Mr. Goecke had already left. Here, Mr. Goecke had an intense and personal reaction to the very idea of 3M's vaccine mandate. And while it was certainly Mr. Goecke's right to stand on his beliefs, and indeed to disassociate from a company he came to disagree

---

[3] Indeed, there is nothing in the record that indicates that anyone was terminated for not being vaccinated.

with, it was his premature fear that he would be terminated that led him to retire, not any failure by 3M. Indeed, had he allowed his employer of nearly 30 years just a couple more weeks, he likely would have been working for 3M when the vaccination requirement was lifted, which was also before any deadline to be vaccinated had been reached. *See, e.g.*, *id.* (explaining that "an employee's duty to act in a reasonable manner includes an obligation not to assume the worst and jump to conclusions") (citing *Knowles v. Citicorp Mortg., Inc.*, 142 F.3d 1082, 1086 (8th Cir. 1998)).

As such, Mr. Goecke's Title VII claim fails, and 3M is entitled to summary judgment in its favor.

## IV. Order

For the foregoing reasons, **IT IS HEREBY ORDERED that:**

1. Defendant's Motion for Summary Judgment (ECF 44) is **GRANTED**.

2. This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: February 10, 2025

*s/ Katherine Menendez*
Katherine Menendez
United States District Judge